# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

     V.                      MAGISTRATE JUDGE'S DOCKET
                                  NO. 2007-M-0544RBC

NICOLE A. HAMBLEN-BAIRD,
    Defendant.

## MEMORANDUM AND
## ORDER ON ADMISSIBILITY OF
## THE RESULTS OF BREATHALYSER TEST

COLLINGS, U.S.M.J.

### I. *Introduction*

Nicole A. Hamblen-Baird ("Ms. Baird" or "the defendant") was charged in a Violation Notice with a violation of 36 C.F.R. § 4.23(a)(2) which prohibits one on National Park Service lands from:

> ...[o]perating or being in actual physical control of a motor vehicle...[at a time when] the alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath.

The offense was alleged to have been committed on September 20, 2007 at the Herring Cove North Lot on the Cape Cod National Seashore, Massachusetts which is under the jurisdiction of the National Park Service.

A non-jury trial was held on November 13, 2008. During the trial, the prosecution sought to introduce the results of a breathalyser test administered by an officer of the Provincetown, Massachusetts police department. Ms. Baird was taken to the Provincetown police station after being stopped by a Park Ranger. After the prosecutor had laid what he considered an adequate foundation, counsel for the defendant objected to the admissibility of the results of the test. The Court allowed the results to be introduced into evidence subject to being stricken if, after legal research, the Court found that an inadequate foundation had been laid. The within Memorandum and Order sets forth the Court's ruling and the reasons which underlie it.

## II. *The Applicable Regulations*

The regulations governing the admissibility of such tests are set forth in 36 C.F.R. § 4.23 which provides, in pertinent part:

> (c) Tests.
>
> (1) At the request or direction of an authorized person who has probable cause to believe that an operator of

a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.

(2) Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissable in any related judicial proceeding.

(3) Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

(4) Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

The defendant's objection to the admissibility of the breathalyser test results is based on the purported failure of the prosecutor to introduce evidence to meet the requirements of subsections (3) and (4).

### III.  The Evidence Adduced At Trial

The witness called by the prosecution was Sergeant James Golden, an eighteen-year veteran of the Provincetown Police Department.  He testified that he was a "certified operator" of the breath machine.  His original certification was in 1980, and he was certified every three years thereafter.  His certification at the time of trial ran through March, 2009.

3

On the evening of September 20, 2007, Sergeant Golden was the shift commander and was present at the police station when Ms. Baird was brought in by National Park Service Rangers.  He testified that he observed her for fifteen minutes before he administered any test and noticed that she was unsteady on her feet, there was a moderate odor of alcohol on her person and she had wet glassy eyes which appeared a "little red."  After fifteen minutes of observation, Sergeant Golden explained the breathalyser test to her, and she agreed to take it.

Sergeant Golden testified that he has checklist that he routinely follows. Two samples are delivered.  In between the samples, the machine purges itself and recalibrates itself.  It also checks itself against its simulator which bears an alcohol solution as a comparison.  Ms. Baird's first breath sample measured .13, then the air sample was purged, a new sample of air was taken in and a comparison test was done with the simulated solution which is in the machine. Sergeant Golden testified that the machine functioned as it was supposed to and produced a simulator score.  Then the machine purged and recalibrated itself and a second breath sample was taken from Ms. Baird which resulted in a reading of .12.  After the machine again purged itself and cleared, Sergeant Golden certified under the pains and penalties of perjury that the test was done

4

properly.

## IV. *Discussion*

Ms. Baird objects to the admission of the test results on the theory that the government "failed to lay a sufficient foundation for such scientific evidence without expert testimony from an independent witness from the scientific community." (#27 at 1)   The federal regulation specifies that "the test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use."   Otherwise, the Court also looks to federal evidence law for analysis, especially Fed. R. Evid. 901(b)(9) which "governs the authentication of data produced by a machine purporting to measure or detect something, such as a radar gun, a breathalyser, and the like."   31 Charles A. Wright and Victor J. Gold, *Federal Practice and Procedure*, § 7114, at 152 (2000).   Thus, to lay a proper foundation for such results, a proponent may introduce proof that:

> (1) the type of device in question is accepted as reliable and as suitable for generating the sort of data offered in evidence, (2) the specific device in question was in good working order at the time it generated the data at issue, and (3) the individual that operated the device was competent to do so.

*Id.* (footnotes omitted).   As the Fourth Circuit has noted:

[w]hen information provided by machines is mainly a product of 'mechanical measurement or manipulation of data by well-accepted scientific or mathematical techniques,' 4 Mueller & Kirkpatrick, [*Federal Evidence*] § 380, at 65 (2d ed. 1994)], reliability concerns are addressed by requiring the proponent to show that the machine and its functions are reliable, that it was correctly adjusted or calibrated, and that the data . . . put into the machine was accurate . . . . In other words, a foundation must be established for the information through authentication, which Federal Rule of Evidence 901(b)(9) allows such proof to be authenticated by evidence 'describing [the] process or system used to produce [the] result' and showing it 'produces an accurate result.'

*United States v. Washington* 498 F.3d 225, 231 (4th Cir. 2007) (second and third alteration in original), *cert. denied*, 129 S.Ct. 2856 (2009).

Under these standards, the Court disagrees with the defendant's contention that "expert testimony from an independent expert witness from the scientific community," is a condition precedent to the admissibility of the test results. The Court further concludes that the evidence produced at trial adequately established that the test results were the result of "accepted scientific methods and equipment of proven accuracy and reliability." 36 C.F.R. § 4.23(c)(4).

First, the Court notes that federal courts have generally held that "the

reliability of the methodology, that is, the scientific technique by which breathalysers measure breath alcohol content, is well established." *United States v. Daras*, 164 F.3d 626, 1998 WL 726748, *1 (4th Cir. Oct. 16, 1998) (per curiam) (table) (unpublished);[1] *United States v. Jackson*, 273 Fed. Appx. 372, 374 (5th Cir. 2008) (per curiam) (unpublished) (affirming admissibility of breathalyser test under 36 C.F.R. § 4.23(c)(4) and collecting cases recognizing that breathalyser results are widely accepted within scientific community). Furthermore, the testing device used here, the Alcotest 7110 MKIII-C, meets the standards of the "evidential breath alcohol measurement devices," established by the National Highway Traffic Safety Administration ("NHTSA"), of the Department of Transportation. *See* 72 Fed. Reg. 71480 (Dec. 17, 2007). *Cf. California v. Trombetta*, 467 U.S. 479, 489 & n.9 (1984) (recognizing that breathalyser in question had "passed accuracy requirements established by the [NHTSA]" and had been reviewed and certified by the state).

In addition, the evidence produced at trial sufficiently established that the

---

[1] *Daras* also noted that "*Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] merely requires that the proffered scientific evidence be relevant and reliable." *Daras*, 164 F.3d 626, 1998 WL 726748, at *1. Because the *Daras* court determined that the reliability of the methodology of obtaining breathalyser results is well established, the court rejected the defendant's argument (also apparently advanced here by Ms. Baird, *see* #27 at 2) that the prosecution had to prove the scientific validity of the methodology under *Daubert*'s standards. *See also United States v. Brannon*, 146 F.3d 1194, 1196 (9th Cir. 1998) (*Daubert* "does not forbid admission of the report," inasmuch as the scientific technique and methodology of breathalysers is well established).

specific equipment used here was "of proven accuracy and reliability operated by personnel certified in its use." *Cf.* Wright & Gold, *supra*, § 7114, at 153 (proponent must establish that "the specific device in question was in good working order at the time it generated the data at issue"). As noted, Sergeant Golden testified that he was certified to operate the machine, and that the machine operated properly. Specifically, he testified that when he administered the test, "there's a series of prompts that come up on the machine," and that he followed a "checklist . . . step by step." (Tr. at 7) As noted, he further testified that the machine prompted him to certify under the pains and penalties of perjury that the test was done properly. In addition to Sergeant Golden's testimony, the prosecutor submitted the "Implied Consent Report Form, Alcotest 7110 MKIII-C, (*see* Exh. 5), which includes a print-out of the test results. Without considering the results themselves, the printout not only confirms that the machine functioned as Sergeant Golden testified, but also establishes that the state certification of the particular machine in this case expired on June 23, 2008. (*See* Exh. 5) The test was performed on September 20, 2007, within the certification period. Thus, in light of Sergeant Golden's testimony that he operated the machine according to standard operating procedures, and the

8

Implied Consent Form, Alcotest 7110 MKIII-C, which evidences the machine's annual certification,[2] there is simply no indication that the machine was functioning improperly at the time of the test. *Cf. Jackson*, 273 Fed. Appx. at 374 (affirming that "test results admitted at trial were the result of 'accepted scientific methods and equipment of proven accuracy and reliability'" based on ranger's testimony that the machine functioned properly and had been checked monthly by state troopers); *see also Daras*, 164 F.3d 626, 1998 WL 726748, at *2 (noting that defendant could identify "no error committed in the performance of the test" and affirming admission of breathalyser results based on printout from machine stating that machine had been tested and found to be accurate by Division of Forensic Science, and testimony of officer that machine worked properly at time of test).

---

[2]

Ms. Baird argues, citing to *United States v. Lizarraga*, 2005 U.S. Dist. LEXIS 25610 (D. Az. Oct. 27, 2005), that the test results should be excluded because calibration certificates were not presented. *Lizarraga* did not involve a prosecution under 36 C.F.R. § 4.23, and applies Arizona state law. *Cf. United States v. Jackson*, 470 F. Supp.2d 654, 658-659 (S.D. Miss. 2007) (federal regulations requiring that "equipment [be] of proven accuracy and reliability," do not contain a "requirement that the equipment be certified by a third party [such as a state] before the results of those tests can be admitted as evidence"), *aff'd*, 273 Fed. Appx. 372 (5th Cir. 2008). However, to the extent that Ms. Baird suggests that the prosecution failed to establish that "the specific device in question was in good working order at the time it generated the data at issue," Wright & Gold, *supra*, § 7114, at 152, the Court notes that Massachusetts regulations require annual testing of the breath testing instruments, 501 CMR § 2.39, and further require that "[t]he breath testing instrument and simulator certifications shall be noted at the top of the Implied Consent Form," *id.* Massachusetts regulations further state that "[a] valid certification shall contain the model number, the serial number and the effective dates of certification." 501 CMR § 2.40. The Implied Consent Form, Alcotest 7110 MKIII-C, meets these certification requirements.

Ms. Baird advances two additional challenges to the admissibility of the test results.  She first suggests that the prosecution failed to lay a proper foundation by failing to "show[]  that the testing machine was operated according to the manufacturer's operational manual and any state regulations." (#27 at 2)  State regulations and procedures are inapplicable to the pending federal charges here, *see United States v. Caine*, 517 F. Supp.2d 586, 590-591 (D. Mass. 2007) (collecting similar cases), and the federal regulations contain no such requirement.[3]  In any event, even accepting Ms. Baird's predicate, Sergeant Golden's testimony about the way in which he operated the machine accords with the procedures for administering a breath test set out in Massachusetts state regulations, *see* 501 CMR § 2.56,[4] which themselves codified the testing procedures set out in an "Infrared Breath Test Operator's Manual."  *See generally Comm. v. Kelley*, 39 Mass. App. Ct. 448, 450-451, 657 N.E.2d 1274, 1276-1277 (1995).

Finally, Baird seeks to exclude the test results because Baird

---

[3]

For that reason, Baird's reliance on *United States v. Plumer*, 920 F. Supp. 151 (D. Kan. 1996), is misplaced.  *Plumer* applied Kansas state-law standards.

[4]

Under those Massachusetts procedures, a breath test should consist of the following sequence: "one adequate breath sample analysis" followed by "one calibration standard analysis" which reads "0.14%, 0.15%, or 0.16%" and a "second adequate breath sample analysis."  *See* 501 CMR § 2.56(3)(a)-(c), (6)(b). The test results here comport with those requirements.

"inadvertently drank soap in water," (#27 at 3), during the fifteen-minute observation period before the test was administered.   This fact does not render the results so unreliable as to be inadmissible.  *Cf. Brannon*, 146 F.3d at 1196 ("Unusual events could also skew the test.  If the defendant gargled alcohol just before it was administered, or burped alcohol into his mouth, the reading might be distorted.  If such events occur, they are part of the defense case; they do not shape the reliability of the method in detecting the alcohol present in the normal case.") (citation omitted); *see also Volk v. United States*, 57 F. Supp.2d 888, 897 (N.D. Calif. 1999) (expert's admission that "artificially high reading" might result if breath tube of machine contained residual alcohol, or machine was stored in area that had recently been painted are factors that go to "the weight of . . . testimony regarding the maintenance and calibration of the machine, not admissibility").  To be sure,  the weight of authority recognizes that the proper procedure for administering a breathalyser test is to observe the subject for fifteen minutes before the test to ensure that any mouth alcohol, which can skew the results, has dissipated.  *See United States v. Daniels*, 2005 WL 2463726, * 1 (N.D. Calif. Oct. 4, 2005) (noting that scientific literature recommends the observation period). Here, however, Sergeant Golden testified

that he observed Ms. Baird for fifteen minutes before administering the test. (*See* Tr. at 6)  Further, Ms. Baird does not contend that "mouth alcohol" was present.  In any event, the import of these details is grist for the fact finder's mill; they do not render the test results inadmissible.

Based on the testimony of Sergeant Golden, the details contained in the Implied Consent Form, Alcotest 7110 MKIII-C, and the weight of legal authority, the Court overrules the objection to the admission of the results of the breathalyser test.

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

March 22, 2010.